# EXHIBIT 1

 **CT Corporation**

**Service of Process Transmittal**
05/06/2021
CT Log Number 539509192

**TO:**    John Zieser, VP, Gen. Csl. & Secy.
Meredith Corporation
1716 Locust St
Des Moines, IA 50309-3023

**RE:**    **Process Served in Georgia**

**FOR:**   Meredith Corporation  (Domestic State: IA)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | MICHAEL DUNSTON, Pltf. vs. MEREDITH CORPORATION, Dft. |
| **DOCUMENT(S) SERVED:** | - |
| **COURT/AGENCY:** | None Specified<br>Case # 2021CV348799 |
| **NATURE OF ACTION:** | Employee Litigation |
| **ON WHOM PROCESS WAS SERVED:** | C T Corporation System, Lawrenceville, GA |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 05/06/2021 at 14:54 |
| **JURISDICTION SERVED :** | Georgia |
| **APPEARANCE OR ANSWER DUE:** | None Specified |
| **ATTORNEY(S) / SENDER(S):** | None Specified |
| **ACTION ITEMS:** | SOP Papers with Transmittal, via  UPS Next Day Air , 1ZX212780130180136 |
| | Image SOP |
| | Email Notification,  John Zieser  john.zieser@meredith.com |
| | Email Notification,  Traci Kuehl  traci.kuehl@meredith.com |
| | Email Notification,  Lindsey Ring  lindsey.ring@meredith.com |
| | Email Notification,  Becky King  becky.king@meredith.com |
| | Email Notification,  Traci Kuehl  traci.kuehl@meredith.com |
| | Email Notification,  David Mills  dmills@cooley.com |
| | Email Notification,  Kevin Mills  kmills@cooley.com |
| | Email Notification,  Aaron Binstock  abinstock@cooley.com |
| | Email Notification,  Sydney Moore  sydney.moore@meredith.com |
| **REGISTERED AGENT ADDRESS:** | C T Corporation System<br>289 S. Culver St. |

Page 1 of  2 / PP

. CT Corporation

**Service of Process Transmittal**
05/06/2021
CT Log Number 539509192

**TO:**   John Zieser, VP, Gen. Csl. & Secy.
Meredith Corporation
1716 Locust St
Des Moines, IA 50309-3023

**RE:**   **Process Served in Georgia**

**FOR:**   Meredith Corporation  (Domestic State: IA)

Lawrenceville, GA 30046

866-331-2303
CentralTeam1@wolterskluwer.com

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.

Fulton County Superior Court
***EFILED***LW
Date: 4/28/2021 10:18 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY, GEORGIA
### 136 PRYOR STREET, ROOM C-103, ATLANTA, GEORGIA 30303
## SUMMONS

MICHAEL DUNSTON

_____  ) Case
                                  ) No.: _____ **2021CV348799** _____
                                  )
_____  )
              **Plaintiff,**       )
                                  )
      **vs.**                      )
MEREDITH CORPORATION              )
                                  )
_____  )
                                  )
              **Defendant**        )
                                  )
                                  )
                                  )
                                  )

TO THE ABOVE NAMED DEFENDANT(S):

You are hereby summoned and required to file electronically with the Clerk of said Court at
https://efilega.tvlerhost.net/ofsweb (unless you are exempt from filing electronically) and serve upon
plaintiff's attorney, whose name and address is:

SHAWN B. MCCULLERS
1984 HOWELL MILL ROAD
STE 250071
ATLANTA, GEORGIA 30325

An answer to the complaint which is herewith served upon you, within 30 days after service of this
summons upon you, exclusive of the day of service; unless proof of service of this complaint is not filed
within five (5) business days of such service. Then time to answer shall not commence until such proof of
service has been filed. **IF YOU FAIL TO DO SO, JUDGMENT BY DEFAULT WILL BE TAKEN
AGAINST YOU FOR THE RELIEF DEMANDED IN THE COMPLAINT.**

This ___ 27TH ___ day of ___ APRIL ___, 20 ___ 21 ___

                           Honorable Cathelene "Tina" Robinson
                           Clerk of Superior Court
                           By _____
                                        Deputy Clerk

To defendant upon whom this petition is served:
This copy of complaint and summons was served upon you _____; 20_____

                                        Deputy Sherriff

Instructions: Attach addendum sheet for additional parties if needed, make notation on this sheet if addendum is used

Fulton County Superior Court
***EFILED***LW
Date: 4/28/2021 10:18 AM
Cathelene Robinson, Clerk

# IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

MICHAEL DUNSTON.

                Plaintiffs,

v.

MEREDITH CORPORATION

                Defendant.

CIVIL ACTION
FILE NO.:     **2021CV348799**

**JURY TRIAL DEMANDED**

**COMPLAINT**

COMES NOW MICHAEL DUNSTON. Plaintiff, and makes and files this complaint against defendants THE MEREDITH CORPORATION as follows:

**PARTIES AND JURISDICTION**

- 1 -

1.

Plaintiff, MICHAEL DUNSTON, an African American Male, who is a member of a protected class or classes, he resided at all times relevant to this matter in ATLANTA, Fulton County, Georgia 30309 and is subject to the jurisdiction of this court.

2.

Defendant MEREDITH CORPORATION, hereafter "Meredith," resides at ATLANTA, Fulton County, Georgia 30318, Defendant Meredith was a resident of Georgia at all times relevant to this matter and subject to all laws and statutes of the state of Georgia and may be served with a copy of the summons and complaint at this address.

3.

Jurisdiction and venue are proper in this court.

## BACKGROUND

4.

Plaintiff, Michael Dunston, is an Emmy award winning News Anchor/Reporter, with 25-years of local news experience as a News Reporter and Anchorman for local television stations, and the second most tenured News Anchor at **WGCL-TV/CBS46** and was supposed to be employed per contract up to July 1, 2020.

5.

Plaintiff, Michael Dunston, has received numerous accolades and has increased ratings for the Defendant during his entire contracted tenure of approximately, more than 5 years.

6.

Plaintiff, Michael Dunston, has received excellent employment performance evaluations during his tenure at WGCL-TV/CBS46, until he employed the McCullers Litigation Group, LLC

- 2 -

and attempted to initiate an Equal Employment Opportunity Complaint, hereafter "EEOC Complaint."

7.

Plaintiff, Michael Dunston has, at all times relevant to this matter, complied with his contractual obligations with the Defendant Meredith.

8.

Plaintiff Michael Dunston has repeatedly placed his direct supervisors on notice that he believed he had been experiencing employment discrimination for an extended period of time dating back to, December 11, 2017, through the time he was terminated.

9.

Plaintiff Michael Dunston, despite both verbal and written notice to his supervisory chain of command; Defendant Meredith's Human Resources Department, Meredith's Human Resources Director; and the attorneys for the Defendant reported that he believed he was being discriminated against on the basis of sex, gender, race, and age.

10.

Plaintiff Michael Dunston made it known, in both written and verbal communication, prior to hiring this firm and subsequent to hiring this firm, that he wanted to and needed to avail himself of the EEOC Complaint filing and investigative process that would afford him the opportunity to vindicate his federal and state constitutional rights to have his complaints appropriately investigated and to have that investigative record fully developed.

11.

Plaintiff Michael Dunston alleged very specific and direct discrimination in his request(s) to have an EEOC Complaint opened by the Defendant Meredith Corporation.

- 3 -

12.

The Defendant Meredith unilaterally and in contravention of both Federal and State Equal Employment Opportunity statutes and policies, denied the Plaintiff the right and ability to have any access to the EEOC complaint process and non-sham investigation to create a fully developed record regarding his discrimination claims.

13.

The Defendant Meredith instead, without providing the Plaintiff any consultation(s), interviews with the corporations EEOC Office's representatives or employees; without providing any statements of the parties identified in the Plaintiff's letter requesting that the EEOC complaint process be initiated; without allowing the Plaintiff the right to challenge, rebut, or provide evidence regarding his allegations—his complaint was summarily dismissed as Defendant Meredith "not finding merit to those claims..." after "...conducting a thorough investigation."

14.

Defendant Meredith, in fact, defamed the Plaintiff as a liar in a letter written on, September 11, 2020, to Plaintiff's Counsel, "Meredith conducted a thorough investigation into the claims raised in your December 16, 2019, letter to Kandis Bock at Meredith, and found no merit to those claims, including finding no evidence of discrimination, hostile work environment, or retaliation against Mr. Dunston."

The Plaintiff alleged as follows:

15.

On or about December 11, 2017, Plaintiff reported to his Assistant News Director inquiring about anchoring the evening "Christmas Anchor schedule" and was told by the Assistant News Director, "I can not have all male anchors!"

- 4 -

16.

Plaintiff stated to his Assistant News Director that the station would have all White newscasts or all female newscasts, so it was discriminatory to exclude Plaintiff from the anchor spot for the purported reason(s), particularly since he was told he would be the primary anchor fill-in and he was not asked to be at that time.

17.

On, December 12, 2017, Plaintiff had a conversation with Defendant Steve Doerr, News Director, detailing the conversation with the Assistant News Director. During the conversation with Mr. Doerr, Mr. Doerr stated, "it was not personal." Plaintiff stated that he believed it was "personal and discriminatory." Plaintiff stated that the Assistant News Director stated further, "I need a woman to anchor."

18.

The Defendant's employee handbook, in two sections details what the duties are for notice of workplace discrimination. The employee manual requires: 1. Supervisors who are made aware of allegations of discrimination report it immediately to the head of Human Resources; and 2. Employees can contact their Manager, Supervisor, or Human Resources.
The manual expressly states:

> " If you feel you have been treated unfairly in your employment, or
> you feel unlawful discrimination may have occurred, you should
> immediately report your concerns to your manager, your manager's
> supervisor, a Human Resources representative, Meredith's EEO
> Manager, or any trusted management official in the company. You
> may also contact the Ethics/Compliance line at (866) 457-7445, or
> you may click here to submit a report online or contact any of the
> members of the Meredith Compliance Committee. Your concerns
> will be promptly investigated, and appropriate remedial measures
> will be taken as warranted under the circumstances. Your concerns
> will be handled as confidentially and sensitively as is practical under
> the circumstances. You, and anyone who assists you in the

- 5 -

complaint process, are protected from retaliation for raising your concerns."

**AND**

**"Supervisory Responsibilities**
All supervisors or managers who receive a complaint or information about suspected discriminatory or sexual harassment, observe behavior that may violate this policy or for any other reason suspect that discriminatory or sexual harassment is occurring, are required to report such suspected inappropriate behavior to Kandis Bock, VP. Human Resources or email HRConcerns@Meredith.com.
In addition to being subject to discipline for engaging in discriminatory or sexually harassing conduct themselves, supervisors and managers will be subject to discipline (up to and including termination) for failing to report suspected discriminatory or sexual harassment or otherwise knowingly allowing such harassment to continue. Supervisors and managers will also be subject to discipline for engaging in prohibited retaliation."

19.

Plaintiff was told by the News Director who hired him Larry Perret, the General Manager Mark Pimentel and Steve Doerr that he was the Primary News Anchor fill-in on the evening newscasts. On or about, December 12, 2017, Mr. Doerr when speaking with Plaintiff, stated "it wasn't about me" but he was "trying different people out on the desk." He mentioned that "it wasn't personal and there was "no illuminati scheme" and that I was a "very good anchor" and it wasn't a reflection on me. However, they continued to fill those "fill-in" anchor spots with women, not allowing Plaintiff to co-anchor with any other male anchors until Plaintiff protested and on occasion it would be changed.

20.

The Defendant continued to fill those fill-in anchor spots with either a woman or a White males. For instance, when Anchor Ben Swann (White Male) was on suspension they filled that spot with Brittany Miller, an African American female and Alicia Roberts, a White female both younger than Mr. Dunston.

- 6 -

21.

When the Plaintiff inquired about his understanding that he was to fill those anchor spots, Mr. Doerr stated to Plaintiff that allowing someone to take the fill-in anchor spot, it was "like, blowing "a kiss" to that person."

22.

On or about, January 29, 2018, when Ben Swann was terminated. the Plaintiff told News Director Steve Doerr that he wanted to "throw his hat into the ring" for the now vacant anchor position.

23.

Mr. Doerr remarked at that time that the Plaintiff, "…really stepped up [anchoring the weekend news]…" however, the Plaintiff never even received an interview for the position. The Defendant instead hired another White male into that opened position, for which the Plaintiff was qualified and capable of doing, without even an interview or audition provided to the Plaintiff.

24.

The Plaintiff subsequently sent and email to both Station General Manager, Lyle Banks and News Director, Stever Doerr again requesting to be interviewed or auditioned for the vacant anchor position. Plaintiff's request was completely ignored.

25.

Again, the station hired Thomas Roberts, a White male, without providing the Plaintiff an audition or interview.

26.

- 7 -

In September of 2018, the Plaintiff, after receiving good performance reviews, was passed up again regarding being the primary fill-in for anchor positions.

27.

The Plaintiff professionally brought this to the attention of Mr. Doerr and was told by Mr. Doerr, in the presence of witnesses, "Frankly I hadn't thought about it."

28.

The Plaintiff met with Mr. Doerr about this matter later in the day, and again reiterated that he felt discriminated against. Again, Mr. Doerr ignored the complaint and took no action, as required under the Defendant's corporate policy on discrimination in the workplace.

29.

On or about, October 2018, the schedule showed again that the Plaintiff had been passed over for an anchor fill-in, despite being told he was the primary fill-in anchor, and Brittany Miller had been placed into the fill-in position.

30.

It was not until the Plaintiff spoke with Mr. Doerr regarding his primary fill-in anchor duties and his belief that he was being discriminated against, that the schedule was changed to reflect the Plaintiff as the anchor. This event came within weeks of having the previously mentioned incident in September 2018.

31.

The Defendant, despite having told the Plaintiff upon hiring that he would be the primary fill-in anchor, continued to fail to put in place a protocol that alerted the Management and Supervisory staff that the Plaintiff was to be the primary "fill-in" anchor, relying instead on discriminatory reasoning such as "We can't have two male anchors," "We are going to go

- 8 -

traditional," or "Frankly, I had not thought about it" to effectively demote the Plaintiff and deny him job opportunities that were open and available that the Plaintiff was able to fill.

32.

In November 2018, Anchor Shon Gables was feeling ill, the Executive Producer stated that the Defendant would keep Brittany Miller on "standby" to anchor, again passing over the Plaintiff who was qualified to fill the position.

33.

The Plaintiff stated that, as primary fill-in anchor, he should be filling in when anchor slots were open. The Defendant's Producer stated, "It didn't look right..." referring to two males anchoring the newscast. The Executive Producer, laughed at the Producer's statement. The Plaintiff stated that their statement was discriminatory and pointed to the fact that Thomas Roberts and he had good ratings together on previous shows.

34.

Defendant's Producer told the Plaintiff in part, "...do you want to wear a wig?" Executive Producer overheard the inappropriate comment and found it funny, evidenced by his laughter at the Plaintiff.

35.

On or about, April 2, 2019, Assistant News Director, came by the Plaintiff's desk and stated that Brittany Miller was going to anchor the evening newscast, when reminded by Plaintiff that he was supposed to be the main fill-in, she stated, "We want to go traditional." [1]

36.

The Plaintiff inquired to the Defendant's News Director, why they could not have two men anchoring. The Plaintiff pointed out that they have had all female newscasts and all White

---

[1] The Plaintiff understood "Traditional" to mean Male and Female anchor combinations.

- 9 -

newscasts, to which the Defendant's Assistant News Director replied, "I don't know it's a more traditional role of anchoring."

37.

Plaintiff took his grievance(s) of discrimination to Steve Doerr and then to a female Assistant News Director, who changed the evening schedule.

38.

On or about, April 29, 2019, The Plaintiff, for the second time, told Mr. Doerr that he was interested in the vacancy in the full-time anchor position that was to be filled after Anchor Sharon Reed left the anchor position.

39.

The Plaintiff, who has stellar ratings and employment performance appraisals, was again denied even an interview or audition for the open position.

40.

The Plaintiff, again spoke with Mr. Doerr and voicing his concerns of discrimination after again being denied even an interview or audition to fill the vacant anchor position and evening anchor position, Plaintiff was told that by Mr. Doerr:

1.　African American males who were "spoken to," according to Mr. Doerr, none were "good enough;" None of them even received an interview because; and

2.　The Defendant had only auditioned White males for the anchor positions.

41.

The Plaintiff voiced his concern that the reason he, who had more local news experience than any of the White males who the station hired, was being denied both an interview and audition was that he was a Black male and that his previously being passed over while maintaining great ratings appeared to be discriminatory to him.

- 10 -

42.

The Plaintiff is raising these claims to management and not a single manager has ever addressed these matters per the guidelines set forth in the Defendant's employee manual.

43.

On or about, August 22, 2019, the Plaintiff decided to make his concerns known directly to Defendant's Human Resources Director, Laurel Berenguer, and forwarded an email that Plaintiff previously sent to Lyle Banks and Steve Doerr regarding his request to be promoted to the anchor position directly to her.

44.

The Defendant's Director of Human Resources, Laurel Berenger failed to comply with her obligations under the employee handbook's discrimination policy and did not open an investigation into the Plaintiff's discrimination claims.

45.

On or about, September 11, 2019, the Plaintiff followed up with a meeting request to open an EEOC investigation into his discrimination complaints, at which both General Manager Lyle Banks and Director of Human Resources Laurel Berenguer were in attendance. Ultimately, the station hired another White male Anchor, Rick Folbaum, into the open position, for which the Plaintiff was qualified and able to fill, without so much as an interview or audition for the Plaintiff who requested he be considered.

46.

More recently, the Plaintiff has found himself the victim of inappropriate managerial gossip regarding what is supposed to be a confidential employment matter. Defendant's News Director, Mr. Doerr, had been speaking with others in the newsroom concerning this Plaintiff's private personnel matters.

- 11 -

47.

Defendant's News Director, Mr. Doerr's statements have resulted in several defamatory rumors in the workplace. The first being that the Plaintiff resigned his position, which was communicated to third-parties; thereby impugning his professional reputation.

48.

Subsequent to this firm's initial *Letter of Representation* on behalf of the Plaintiff, in which we made clear that it was our determination that none of the supervisory personnel of Meredith or CBS46 had provided the Plaintiff with the updated corporate EEOC contact office, investigative process information, or EEOC counseling, so that he could file his complaint on any of the instances, in which, Plaintiff noted he believed he was being discriminated against in violation of the Defendant's own policies the Defendant began to retaliate against the Plaintiff.

49.

The Defendant, following the Plaintiff's protected notifications of discrimination the Defendant denied him contractually obligated consultations, which directly negatively affected his professional development and career opportunities; stopped running him in the news station's promotional packages; gave him less and less airtime until finally reducing his pay and terminating him prior to the expiration of his employment contract and further negatively impacting his marketability in the media market by removing him from his daily reporting and anchor opportunities.

## COUNT 1
## DISCRIMINATION

50.

Plaintiffs reallege and incorporates herein the allegations contained in paragraphs 1 through 49 above as if fully restated.

- 12 -

51.

Defendant Meredith conspired with its employees, to wit Steve Doerr; Lyle Banks; and Kandis Bock at various and relevant times that are material to this complaint to deprive the Plaintiff of his Civil Rights to a workplace that did not discriminate against him.

52.

The Defendant Meredith is an "employer" under the definition as contemplated by Title VII of the Civil Rights Act of 1964, with more than 15 "employee(s)."

53.

The Defendant Meredith is required by Federal and State Statute to adhere to the standard set forth to investigate claims of discrimination in the workplace and allow the Complainant to be heard and participate in said investigation.

54.

The Defendant Meredith, by depriving the Plaintiff of his contractual protection to be free from discrimination in the workplace did discriminate against him directly on the basis of race, sex, age, and gender and thereby ratified the discriminatory conduct of its employees, managers, and supervisors that were inconsistent with their own policies, regulations, and rules regarding this Plaintiff's complaints of discrimination.

55.

The Defendant Meredith, by refusing the Plaintiff the opportunity to interview for the vacant News Anchor position(s) while the position(s) were open and the Plaintiff was qualified, and not auditioning any African American Applicants, to include but not limited to the Plaintiff, did discriminate against the Plaintiff on the basis of race and ethnicity.

- 13 -

56.

The Defendant Meredith, by depriving the Plaintiff of the opportunity to anchor newscasts with White male co-anchors did directly discriminate against the Defendant on the basis of race and ethnicity.

57.

The Defendant Meredith, by depriving the Plaintiff of the opportunity to anchor newscasts with all male co-anchors did directly discriminate against the Defendant basis of sex and gender.

58.

The Defendant Meredith, by depriving the Plaintiff of the opportunity to anchor newscasts with all male co-anchors, but allowing all-female co-anchors on newscasts did directly discriminate against the Defendant on the basis of sex and gender.

59.

The Defendant Meredith, by depriving the Plaintiff of his contractual professional consultation did create an adverse change in the condition(s) of the Plaintiff's employment, workplace, work responsibilities, and was a *de facto* demotion as a result of the Plaintiff engaging in protected activity.

60.

The Defendant Meredith, by depriving the Plaintiff of his opportunity to be considered, interviewed or otherwise have the opportunity to be considered for a position that he was qualified for, that remained open; and for which he requested to be considered for did discriminate against him on the basis of race and ethnicity.

- 14 -

61.

Defendant Meredith conspired with its employee(s), Kandis Bock, at relevant times that are material to this complaint, to deprive the Plaintiff of his right to have access to and benefit from the EEOC claim and investigative process by refusing to properly conduct a legitimate investigation[2] in which the Plaintiff could participate, access, review and respond to the statements of the parties that he identified as having directly discriminated against him and the events and circumstances from which they derived.

62.

Defendant Meredith conspired with its employee(s), Kandis Bock, at relevant times that are material to this complaint, to deprive the Plaintiff of his right to have access to and benefit from the EEOC claim and investigative process by unilaterally conducting a "sham investigation" in lieu of a legitimate EEOC claim(s) process into the Plaintiff's allegations, thereby exacerbating the discrimination against the Plaintiff on the basis of race. ethnicity. sex, gender and retaliation.

63.

Defendant Meredith, at all times relevant to these claims. was aware of the Plaintiffs desire and repeated requests to proceed through the EEOC claim(s) process.

64.

Defendant Meredith willfully, knowingly, and with deliberate indifference chose to ignore, conspire against, conduct a "sham investigation," in an effort to both compound the negative results of the Plaintiff's experiences and deny the Plaintiff his civil and constitutional rights to be free from discrimination of any kind in his workplace.

---

[2] Defendant's Human Resources Department never conducted an actual legitimate investigation to include and intake interview, providing any statements of the accused parties, giving the Plaintiff the opportunity rebut any statements or provide information to support the record or otherwise create a full record regarding his claims…The Defendant simply had it's attorney draft a letter falsely claiming to have "conducted a thorough investigation," when they actually failed to conduct an investigation into the Plaintiff's claims all together, Therefore, their "investigation" was a sham.

- 15 -

65.

Defendant Meredith was negligent in failing to act in a manner consistent with both the Plaintiff's employment contract and their employee handbook regarding any claim(s) of discrimination.

66.

As a result of defendant's negligence, conspiring, willful and knowing deliberate indifference to his suffering, Plaintiff suffered damages.

67.

Defendant's negligence is the sole and proximate cause of Plaintiffs' injuries.

## COUNT 2
## BREACH OF CONTRACT

68.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 67 above as if fully restated.

69.

Defendant Meredith, as an "Employer," entered into an employment contract, hereafter "contract," with the Plaintiff, Michael Dunston, the "Employee," on or about, July 2, 2018.

70.

Defendant Meredith owned and operated the television station where the relevant and material incidents and occurrences that gave rise to this complaint occurred.

- 16 -

71.

Defendant Meredith, knew or should have known, that by not complying with the Federal and State law regarding employer's obligation to provide access to the EEOC Complaint process; and by not avoiding acts of direct and indirect discrimination in the workplace they would fail to protect the Plaintiff from discrimination in the workplace, therefore, they were in breach of their contract that provides a duty to maintain a workplace free of discrimination.

72.

Defendant Meredith was an "employer" as defined by Federal and State Equal Employment Opportunity statutes at all times relevant to this/these incidents and occurrences giving rise to this lawsuit.

73.

Defendant Meredith wrongfully terminated its contract with the Plaintiff, the "Employee," on or about, May 21, 2020, thereby breaching the employment contract, that did not expire until, on or about, July 2, 2021, without cause.

74.

Plaintiff has, at all times relevant to the facts and circumstances of this employment agreement, acted within the defined bounds of his contract with Defendant Meredith.

75.

Plaintiff, at all times relevant to the facts and occurrences material to this complaint, has performed all of his duties consistent with the rules, regulations, company policies, as were consistent with his contractual obligation with Defendant Meredith.

76.

Plaintiff, at no time relevant to the facts and occurrences material to the term of the contract, failed to be both capable and capable with or without accommodation, as contemplated by pg. 6, Section 12iii of the contract.

77.

Defendant Meredith by terminating the Plaintiff's employment contract prior to its expiration without "cause" as defined in the employment agreement did breach the contract. (pg. 6, Section 12 iv)

78.

Defendant Meredith exercised, or had the ability to exercise control over the employees, supervisors; managers and all other employees and relevant processes to provide the Plaintiff access to a legitimate EEOC Complaint process.

79.

Defendant Meredith and its employees is/are responsible for the conduct, actions, incidents and occurrences alleged herein by the Plaintiff, and is/are the sole and proximate cause of all of the damages herein alleged by this Plaintiff that resulted in his pain, suffering and damages.

## COUNT 3
## RETALIATION FOR PROTECTED ACTIVITY

80.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 79 above as if fully restated.

81.

Plaintiff is and was, at all times relative to the facts and occurrences contained in this complaint, a member of protected class(es), as contemplated by the Federal and State Equal Employment Opportunity statutes.

82.

- 18 -

Plaintiff did make protected disclosures regarding:

     a. Discriminatory treatment on the basis of race, ethnicity, sex, gender, age and retaliation;
     b. Defamation;
     c. Sex Discrimination;
     d. Age Discrimination;
     e. Heightened scrutiny; and
     f. Denial of performance enhancing professional consultation opportunities that other Caucasian, Younger, and Female employees were not denied,

83.

Plaintiff by informing his supervisors, timely and immediately, on or near the occurrences of each act that he believed evidenced direct and indirect discrimination, which took place on dates, on or about, December 11, 2017 through present did engage in protected activity.

84.

Plaintiff by informing Defendant Meredith of recurring instances of discriminatory occurrences directed at him for several years did place the Defendant Meredith on actual and constructive notice of his experiencing employment discrimination in their workplace.

85.

Plaintiff by informing Defendant Meredith of recurring instances of discriminatory occurrences directed at him for several years did demonstrate that the discrimination he endured was blatant, overt, severe and pervasive over time.

86.

Defendant Meredith by terminating the Plaintiff subsequent to his having reported various instances of what the Plaintiff believed to be acts of employment discrimination, while at the same time, denying him access to the EEOC Complaint and investigation processes to the date of his termination in breach of their employment contract, which evidenced continuing employment

- 19 -

discrimination. is retaliating against this Plaintiff for his protected activity of reporting employment discrimination.

87.

Defendant Meredith, by depriving the Plaintiff of his contractual opportunity to consult with the professional consultants it hires each year to benefit by improving his professional performance; consult on his appearance, which had the value of maintaining and/or enhancing his career and value of his compensable skills as retaliation for attempting to file and EEOC claim. which is a protected activity.

88.

Defendant Meredith by terminating the Plaintiff without cause prior to the end of his employment contract, subsequent to his engaging in protected activity by reporting direct and indirect instances of employment discrimination. did retaliate against him for engaging in protected EEOC activity.

89.

Defendant Meredith is the sole and proximate cause of the Plaintiff's injuries and damages.

## COUNT 4
## CONSPIRACY TO VIOLATE CIVIL RIGHTS BY DENYING ACCESS TO EEOC COMPLAINT PROCESS

90.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 89 above as if fully restated.

91.

Plaintiff was an employee of the Defendant Meredith as contemplated by the contract.

- 20 -

92.

The Defendant by being an "employer" within the contemplation of and within the definition of an "employer" under both the Federal and State law is required to perform a legitimate investigation into complaints of discrimination.

93.

Defendant Meredith. per it's employee handbook, imposes several duties on Meredith employees that are triggered upon a supervisor or manager receiving a complaint of discrimination, observe behavior that may violate their policy or for any other reason suspect that discriminatory activity or sexual harassment is occurring:

    a. required to report such suspected inappropriate behavior to Kandis Bock. VP, Human Resources or email HRConcerns@Meredith.com:

    b. Your concerns will be promptly investigated;

    c. appropriate remedial measures will be taken as warranted under the circumstances;

    d. Your concerns will be handled as confidentially and sensitively as is practical under the circumstances;

    e. You, and anyone who assists you in the complaint process, are protected from retaliation for raising your concerns;

    f. supervisors and managers will be subject to discipline (up to and including termination) for failing to report suspected discriminatory or sexual harassment or otherwise knowingly allowing such harassment to continue;

    g. Supervisors and managers will also be subject to discipline for engaging in prohibited retaliation.

94.

Defendant Meredith, knew or should have known, at all times relevant to the facts and occurrences of this complaint, that it was wholly and solely obligated by Federal law, State law

- 21 -

and its own company policy to conduct a prompt legitimate investigation into the discrimination complaint(s) it had notice of from, any and all employees to include the Plaintiff.

95.

Defendant Meredith, knew or should have known, that by Defendant Kandis Bock, Laurel Berenguer, Senior Management, and their attorneys coming together to assert that they had completed a "thorough investigation" into the Plaintiff's discrimination complaints and finding them to not be meritorious without conducting a legitimate investigation or allowing the Plaintiff, then Complainant, the opportunity to read, rebut, or have access to the positions statement(s) and the statements of any witnesses in order for the Plaintiff to file a rebuttal answer to, they were thereby denying the Plaintiff the right to build a full record related to the discrimination he was experiencing as a Meredith Corporation employee and thereby, conspiring to violate the Plaintiff's civil rights.

96.

Defendant Meredith, knew or should have known that it had the sole authority to exercise over its employees, managers, supervisors, and directors to compel them to act in accordance with it's own company policy, Federal, and State law to conduct a prompt legitimate EEOC investigative process and thereby Meredith is the sole and proximate cause of the Plaintiff's injuries and damages.

## COUNT 5
## CONSPIRACY TO DEPRIVE CONSTITUTIONAL RIGHTS

97.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 96 above as if fully restated.

98.

- 22 -

Plaintiff, beginning on or about, December 11, 2017, put his supervisors on actual notice that he believed he was being discriminated against.

### 99.

Plaintiff continued to make protected disclosures to his News Director, Assistant News Director, and Human Resources personnel and not one of those persons took the actions mandated by the Defendant's corporate policy to initiate the EEOC processes detailed in the Employee Handbook, rules, and regulations of this Defendant.

### 100.

The Defendant's Supervisory and Human Resources employees to include Steven Doerr, Kandis Bock, and Laurel Berenguer, in their official capacities, conferred and opted to take no action on the Plaintiff's claim(s) of discrimination.

### 101.

The Defendant simply ignored the Plaintiff's claims of discrimination, and after conferring on the claims of this Plaintiff, refused to initiate the protocol for discrimination claims, and failed to act under the duty imposed upon them by company policy, and federal and state anti-discrimination laws, thereby conspiring to deny the Plaintiff of his constitutional right to be free of discrimination in the workplace.

### 102.

Defendant Meredith by issuing a letter stating that Mr. Dunston's claims were "thoroughly investigated...and found to have no merit" did ratify the discriminatory treatment and actions suffered by this Plaintiff over many years working for this Defendant.

### 103.

Defendant Meredith is responsible for the actions of its employees, and knew or should have known that their convening and ultimate decision to fail to abide by their own company

- 23 -

handbooks, rules. and regulation coupled with their failure to conduct a "sham" investigation that was far less than thorough would result in a conspiracy resulting in a deprivation of the Plaintiff's civil rights

104.

Defendant Meredith is the sole and proximate cause of the Plaintiff's injuries.

## COUNT 6
## BREACH OF DUTIES OF GOOD FAITH AND FAIR DEALING

105.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 104 above as if fully restated.

106.

The State of Georgia imposes with every contract an implied duty that requires parties to a contract exercise good faith and honest judgment in carrying out their rights and obligations under the contract and not act arbitrarily or capriciously or with an improper motive.

107.

Defendant Meredith by wrongfully terminating the Plaintiff prior to his contract end date; refusing to conduct a legitimate EEOC Complaint process and investigation; by excluding the Plaintiff from consultation with the performance consultants with no advanced notice or cause, and other actions complained of herein, did breach their duties of good faith and fair dealing in and did so in an arbitrary and capricious manner.

108.

Defendant Meredith did by performing all of the actions aforementioned willfully and knowingly demonstrating deliberate indifference to his suffering and causing injury and damages.

- 24 -

109.

Defendant Meredith is the sole and proximate cause of the Plaintiff's injuries.

## **COUNT 7**
## **DEFAMATION**

110.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 109 above as if fully restated.

111.

Defendant Meredith, did publish to the Plaintiff's co-workers that the Plaintiff had cleared off his desk and quit his position without notice.

112.

Defendant Meredith, and its managers and supervisors did publish to the Plaintiff's co-workers that the Plaintiff had filed complaints of discrimination when such complaints are supposed to be confidential and sensitively handled per their employee policies.

113.

Plaintiff in fact, did not quit his position, and at no time relevant to the facts and occurrences giving rise to this complaint, did he communicate to any manager or supervisor that he was quitting or abandoning his position.

114.

- 25 -

Defendant Meredith had the ability at all times relevant to the facts and occurrences giving rise to this complaint, to exercise control of its managers and supervisors and by failing to correct such defamatory statements did ratify the acts of its employees to defame the Plaintiff.

115.

Defendant Meredith and its managers and supervisors had the duty, at all times relevant to the facts and occurrences giving rise to this complaint, to exercise control of its employees, managers, and supervisors and by failing to correct their failure to handle the Plaintiff's claims confidentially and sensitively did ratify the acts of its employees to defame the Plaintiff by breaching their duty of confidentiality and sensitivity in misstating the Plaintiff's discrimination complaint(s) and lying saying the Plaintiff had quit his job.

116.

As a direct and proximate result of Defendant Meredith's to exercise control that is solely within its power to control and enforce its corporate rules, regulations, policies, and maintenance of a work environment where employees are not defamed, or their private personnel matters shared with their co-workers by its managers and supervisors the Plaintiff has suffered damages.

## COUNT 8
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

117.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 116 above as if fully restated.

118.

Defendant wrongfully acted, or failed to act, with intent to cause Plaintiff severe emotional distress, or so acted when Defendant knew, or should have known, that the conduct

- 26 -

would cause or be likely to cause severe emotional distress.

119.

Plaintiff's sustaining of severe emotional distress as direct and proximate result of Defendant's intentional conduct.

120.

Plaintiff's suffering of physical illness or injury is further evidence of the proximate cause of severe emotional distress suffered that was caused by this Defendant.

## COUNT 9
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

121.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 120 above as if fully restated.

122.

Defendant negligently acted, or failed to act, with intent to cause plaintiff severe emotional distress, or so acted when defendant knew, or should have known, that the conduct would cause or be likely to cause severe emotional distress.

123.

Plaintiff's sustaining of severe emotional distress as direct and proximate result of Defendant's intentional conduct.

124.

Plaintiff's suffering of physical illness or injury as further evidence of the proximate cause of severe emotional distress suffered that was caused by this Defendant.

- 27 -

## COUNT 10
## WRONGFUL TERMINATION

### 125.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 124 above as if fully restated.

### 126.

Plaintiff entered a contract for employment with the Defendant that terminated on or about July 2, 2020.

### 127.

Plaintiff, at all times relevant to this action, did abide and act in accordance with all terms of his contractual employment obligation and maintained good employment reviews.

### 128.

Plaintiff, on or about, December 11, 2017, began to report what he believed to be discrimination against him in the workplace.

### 129.

Defendant by failing to conduct a legitimate investigation and initiate the legally required actions under both federal and state law regarding complaints of discrimination in the workplace, and ignoring the duties imposed upon this Defendant by their own employee manual, rules, policies, and regulations to the detriment and continued discrimination against the Plaintiff, that did wrongfully terminate his employment in retaliation for his protected disclosures of discrimination as contemplated pursuant Title VII of the Civil Rights Act of 1964.

- 28 -

130.

Defendant Meredith had the ability at all times relevant to the facts and occurrences giving rise to this complaint, to exercise control of its managers and supervisors and by failing to correct such discriminatory behavior and sanctioning the Plaintiff's termination after his protected disclosures did ratify the acts of its employees to discriminate against the Plaintiff and thereby wrongfully terminated the Plaintiff.

131.

Defendant terminated Plaintiff's contractually mandated employment prior to the expiration of said employment contract without cause, in contravention of well-established employment law and thereby, wrongfully terminated the Plaintiff.

132.

As a direct and proximate result of Defendant Meredith's failure to exercise control, that is solely within its power, to control and enforce its corporate rules, regulations, policies, and maintenance of a work environment where employees are not discriminated against; defamed; or wrongfully terminated by its managers and supervisors the Plaintiff has suffered damages.

## COUNT 11
## PUNITIVE DAMAGES

133.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 132 above as if fully restated.

134.

Defendant Meredith by failing to act when Plaintiff filed his internal EEOC Complaint wrongfully terminating the Plaintiff on grounds they, knew or should have known to be wrongful; intentionally damaging his professional reputation; intentionally publishing his

- 29 -

termination to his co-workers falsely alleging he had quit in an effort to damage his reputation and professional image.

### 135.

Defendant did, by clear and convincing evidence, in their actions show willful misconduct, malice, fraud, wantonness, oppression, or that entire want of care which would raise the presumption of conscious indifference to consequences.

### 136.

Defendants' conduct amounts to "specific intent to cause harm" as the term is defined in the law, hence there should be no cap or limitations upon the amount of punitive damages.

### 137.

Plaintiff has been damaged by the actions of the defendant and is entitled to punitive damages in the amount set by the enlightened minds of a jury.

## COUNT 12
## DISPARATE IMPACT

### 138.

Plaintiffs realleges and incorporates herein the allegations contained in paragraphs 1 through 137 above as if fully restated.

### 139.

Defendant by using hiring and promotion policies, to deny opportunity to Black Meredith employees, to advance their careers by refusing to interview; audition; hire or promote within the corporate structure to anchor positions and other leadership positions at the stations they owned, did promote, ratify, and maintain a facially neutral policy of non-discrimination in hiring and the workplace, but exercised those policies to the detriment of Black applicants and employees to

- 30 -

exclude them from hire and/or promotion within the corporation by refusing to interview, audition, or promote Black applicants and employees to positions that were available and for which they qualified.

140.

Defendant's practice of hiring Managers and Supervisors, like Kevin O'Brien[3] and Steven Doerr,[4] who had espoused racist and discriminatory animus and still continued to be hired into leadership positions throughout the Meredith Corporation, which the Defendant Knew or should have known would promote racist, Anti-Semitic, hostile workplaces, and overtly discriminatory practices that would permeate their workplaces, did create systems and hiring protocols that resulted in a disparate impact on Black applicants and employees, to include this Plaintiff. **See Exhibits A & B.**

141.

Defendant was on notice by having been a "defendant" in multiple previous lawsuits of the extreme and pervasive policies of discriminatory treatment, disparate treatment and discriminatory statements of its executives and that it spanned several locations in which it owned.

142.

Defendant's Executive. Vice-President of Content, Gary Brown is alleged in a lawsuit believed settled in favor of the Plaintiff, to have stated that he "doubted he could find any real

---

[3] Kevin O'Brien, while Head of Meredith Corp.'s Broadcast Group in on record stating, "We've got to quit hiring all these black people,"… O'Brien had urged colleagues not to hire black people and complained that an Atlanta TV station was "too black."… "We can't right all the wrongs of the Civil War; we've got to quit hiring all these black people."… "You shouldn't hire old black guys. These guys don't listen, they have attitudes, and you can't control them."… "I've never seen a minority broadcast enterprise work in my entire life, especially if they have control!"… "You probably don't like the same fruit as me. You look like a watermelon kind of guy." Associated Press Article, March 12, 2005, "Meredith Fires Exec Over Racist Remarks." NBC News, Article March 12, 2005, "Meredith fires Exec Over Racist Remark." https://www.nbcnews.com/id/wbna7163988 **See Exhibit A.**

[4] In Paula Madison's Affidavit, Steve Doerr is quoted as spontaneously yelling out while returning from an executive outing during the 2002 Olympics in Salt Lake City, Utah, "Hey Brandon! What is it that they say uhhh… Jews On Your Knees! Jews On Your Knees!" **See Exhibit B.** Steve Doerr is one of the main perpetrators of the discrimination claimed by this Plaintiff.

-31-

talent at the [National Association of Black Journalists Las Vegas] Convention. ", a sentiment, which was reflected in Steven Doerr's comments about having Black applicants among which "none were good enough." **See Exhibit C.**

143.

Defendant, as a matter of policy, continued to hire and promote White males over more experienced, better ratings-earning, Black males while promoting and espousing policies and practices that were discriminatory and extreme and pervasive over an extended period of years on the basis of race, gender, age, and sex. These policies had a disparate impact on Black employees, including but not limited to the Plaintiff.

143.

Defendant is the sole and proximate cause of the Plaintiff's injuries.

WHEREFORE, Plaintiff prays that he have a jury trial on all issues and judgment against Defendant as follows:

(a)    That Plaintiff recover the full value of past and future medical expenses; past and future lost wages, lost promotions, lost job opportunity, and lost value in exposure and media prestige in an amount to be proven at trial;

(b)    That Plaintiff recover for mental and physical pain and suffering and emotional distress in an amount to be determined by the enlightened conscience of the jury;

(c)    That Plaintiff recover such other and further relief as is just and proper;

(d)    That Plaintiff recover punitive damages;

(e)    Attorney's fees;

(e)    That all issues be tried before a jury;

(f)    That Plaintiff recover any additional relief deemed good and just by this Court.

This 28th day of April, 2021.

- 32 -

THE MCCULLERS LITIGATION GROUP, LLC


By:  /s/Shawn McCullers
**Shawn McCullers**
Georgia Bar No. 784019


*Attorney for Plaintiff*

*1984 Howell Mill Rd*
*PO Box 250071*
*Atlanta, Georgia 30325*
*(404) 919-1264*
*Fax:  (770) 538-1969*
*E-mail: Smccullers@mlitgroup.com*

- 33 -

## VERIFICATION OF COMPLAINT

State of _N C_

County of _Mecklenburg_

MICHAEL DUNSTON, Plaintiff, being first duly sworn on oath deposes and says:

(1)      I am the plaintiff in this action and am suing individually The Meredith Corporation

(2)      I have read the attached Verified Complaint for Damages, I am familiar with the facts alleged in it, and hereby verify that the factual allegations contained in the Verified Complaint are true and correct to the best of my information, understanding and belief.

_Michael Dunston_

Michael Dunston

Plaintiff

The above Plaintiff, Michael Dunston, did appear before me and presenting: _DL# 0000 247 88225_

Drivers License and/or is personally known to me _Michael Bryan Dunston_

_Khamla Sphabmixay_
Notary

_04/28/2021_
Date

Expiration: _07/27/2025_

> Khamla Sphabmixay
> NOTARY PUBLIC
> Mecklenburg County, NC
> My Commission Expires July 27, 2025

- 36 -

## IN THE SUPERIOR COURT OF FULTON COUNTY
## STATE OF GEORGIA

MICHAEL DUNSTON.

             Plaintiff,

v.

THE MEREDITH CORPORATION

CIVIL ACTION

FILE NO.: _____**2021CV348799**_____

## CERTIFICATE OF SERVICE

    This is to certify that I have this day served a copy of the foregoing **COMPLAINT** by filing with the Clerk of Superior Court for FULTON County, Georgia to Counsel for the Defendant and/or Defendant, via electronic service through the E-filing System, and/or certified U.S. Postal Mail with approbate postage affixed:

Meredith Corporation
425 14th Street NW
Atlanta, Georgia 30318
Local Media Group
**WGCL-TV/CBS46**

CT Corporation System.
Registered Agent,
289 S Culver St
- 34 -

Lawrenceville, Georgia 30046

This 28th day of April, 2021.

Respectfully submitted,

By: /s/SHAWN MCCULLERS
SHAWN MCCULLERS
Georgia Bar No. 784019
*Attorney for Plaintiff*

THE MCCULLERS LITIGATION GROUP, LLC
*1984 Howell Mill Rd.*
*PO Box 250071*
*Atlanta, Georgia 30325*
*(404) 919-1264*
*(770) 538-1969 (F)*
*Smccullers@mlitgroup.com*

- 35 -

# EXHIBIT A

WORLD

# Meredith fires exec over racist remarks

'We've got to quit hiring all these black people,' O'Brien allegedly said according to lawsuit

March 12, 2005, 12:17 AM EST / Source: The Associated Press

Meredith Corp. fired the head of its broadcast group last fall after documenting his repeated comments criticizing blacks, including: "We've got to quit hiring all these black people," according a company memo filed in a lawsuit against the executive.

The Des Moines-based media company, which publishes specialty books and magazines including Ladies' Home Journal and Better Homes and Gardens, fired Kevin O'Brien in October, citing violations of its equal opportunity policies.

According to a company memo uncovered in a search of court documents this week, an internal investigation found that O'Brien "made statements, often in the context of speaking about a minority employee, that employ racial and ethnic stereotypes and denigrate women."

The investigators found that, among other things, O'Brien had urged colleagues not to hire black people and complained that an Atlanta TV station was "too black."

O'Brien's attorney, David Casselman, of Tarzana, Calif., said the company's disclosure was meant to embarrass his client.

He did not dispute the allegations, but insisted his client is not a racist.

O'Brien, 62, had been at Meredith for three years, overseeing 13 television stations and half of Meredith's 2,600 employees. He was credited with turning around the broadcast group, which reaches 10 percent of TV households in the country, and earned almost $2 million last year. The group includes KPHO in Phoenix, WFSB in Hartford and KPDX and KPTV in Portland, Ore.

The Nov. 8 memo from the company's lawyer to O'Brien is one of few documents that was not sealed in a lawsuit filed by Meredith against the former executive. The company's claims and what it was seeking were in the sealed documents. O'Brien has filed documents seeking to unseal the case and is expected to file a countersuit alleging wrongful termination.

**Recommended**



WORLD
**Relief in Armenia, fury in Turkey as Biden breaks with past to recognize genocide**



WORLD
**Israel airstrikes hit Gaza after rocket attacks, clashes intensify in Jerusalem**

"There was far more going on here than what they have voluntarily disclosed, and they hope to keep the truth a secret," Casselman said.

According to the memo, Meredith hired two labor lawyers to investigate complaints from the general manager of WGCL-TV in Atlanta. She was fired days later.

Meredith's top lawyer wrote in the memo to O'Brien that the investigation had confirmed that he made the following statements:

- "We can't right all the wrongs of the Civil War; we've got to quit hiring all these black people."

- "You shouldn't hire old black guys. These guys don't listen, they have attitudes, and you can't control them."

O'Brien came to Meredith after 15 years as an executive with Cox Television Independent Group and had headed the California Broadcasters Association and the Association of Local Television Stations.

While at Meredith, he shook up management at several local stations and oversaw the acquisition of others. Analysts credited him with boosting profit.

According to the memo, O'Brien also:

- complained that the Atlanta station hired too many black reporters and anchors;

- said that a black weather forecaster, who was eight months pregnant at the time, should be fired because she was too fat;

- declined a business deal with a minority-owned station, writing in an e-mail: "I've never seen a minority broadcast enterprise work in my entire life, especially if they have control!" and

- told a black waiter at a company outing: "You probably don't like the same fruit as me. You look like a watermelon kind of guy."

The investigation also found that O'Brien solicited gifts from business partners, gave special attention to certain female employees and helped his daughter get an on-air job at a company station.

O'Brien, who has homes in San Francisco and Las Vegas, did not return an e-mail message seeking comment. He remains unemployed and has complained in court documents that Meredith's allegations have ruined his reputation.

Meredith "took swift, decisive and appropriate action" against O'Brien, spokesman Art Slusark said. He said Meredith does not tolerate discrimination.

SPONSORED / THE FARMER'S DOG

## Dogs should eat food, not burnt brown balls.

SPONSORED / TOP 10 MORTGAGE REFINANCE

## Don't Refinance Before Comparing These Top 10 Lenders

SPONSORED / NERDWALLET

**We make it easy to find a better mortgage rate in Atlanta in 2021**

SPONSORED / LOWERMYBILLS NMLS#167283; 3306

**Forget The 30yr Mortgage If You Owe Less Than $356K. (Do This To Cut Your Mortgage In Half)**

SPONSORED / SPLUNK

**5 Big Myths of AI and Machine Learning Debunked**

SPONSORED / SONOVIA

**The Best Face Mask for Air Travel in 2021**

SPONSORED / NERDWALLET

**Want your dream home? Start with a dream mortgage**

SPONSORED / MARTHA STEWART & MARLEY SPOON

**Martha's Best Recipes Delivered to Your Door.**

SPONSORED / EIM FOR NATIONALFAMILY

**Seniors Under 86 Years Of Age May Get Up To $50000 In Life Ins for $19/Mth**

SPONSORED / MYNAMENECKLACE.COM

**A beautiful necklace for Mother's Day engraved with your family's names.**

SPONSORED / SPLUNK

**Splunk Tools for Telework**

SPONSORED / 2021 HONDA SUVS | SEARCH ADS

**Shut The Front Door! The 2021 Hondas Astonish!**

SPONSORED / LOWERMYBILLS NMLS#167283; 3306

**One Simple Way to Reduce Your Monthly Mortgage**

SPONSORED / LOWERMYBILLS

# Forget The 30yr Mortgage If You Owe Less Than $356K. (Consider a shorter mortgage instead)

## More From NBC News

NBC NEWS / .VIDEO

# Watch: Police officer punches woman while handcuffed

NBC NEWS / VIDEO

### Hundreds protest in Knoxville after no charges for officer who fatally shot 17-year-old

NBC NEWS / SHOP

### The best flower bouquets for Mother's Day

SPONSORED / BIBERK BUSINESS INSURANCE QUOTES

# Five Minutes Away From General Liability Coverage

SPONSORED / ICANANSWERTHAT.COM

# Introducing The New Head Turning Volkswagen Atlas.

SPONSORED / FORGE OF EMPIRES

## If You Need To Kill Time On Your Computer, This Civilization Game Is A Must-Have. No Install.

SPONSORED / SPLUNK

## The 10 Essential Capabilities of a Best-of-Breed SOAR

NBC NEWS / VIDEO

## George Floyd mural vandalized with racial slur

NBC NEWS / NIGHTLY-NEWS

**Russian military harassing U.S. civilian fishing boats near Alaska: exclusive**

NBC NEWS / DATELINE

**More of Ashley McArthur's Police Interview**

ABOUT                                                                                    CA NOTICE

CONTACT

CAREERS

PRIVACY POLICY

DO NOT SELL MY PERSONAL INFORMATION

TERMS OF SERVICE

NBC NEWS SITEMAP

ADVERTISE

AD CHOICES

© 2021 NBC UNIVERSAL

# EXHIBIT B

## <u>AFFIDAVIT OF PAULA MADISON</u>

Personally, appeared before the undersigned officer, duly authorized by law to administer oaths, PAULA MADISON, who, having first been duly sworn, deposes and says on oath the following:

1.

I am PAULA MADISON, an adult, laboring under no legal disability, and I am providing the following information based upon my personal knowledge.

2.

I am currently a resident of the state of California, and have worked in the television, network broadcasting, and media industries as an executive for 45 years.

3.

I knew Steve Doerr for about 10 years, including when we both were employees of NBC.

4.

In 2002, I was then the President and General Manager of KNBC TV, Channel 4 Los Angeles, California and Mr. Doerr was a Senior Vice President in the NBC TV Stations Division.

5.

During or About, the time of the 2002 Olympics in Salt Lake City, Utah, our network was broadcasting on location and we had an event for the Executive Staff that was held at an off-campus venue.

6.

I was in attendance along with several colleagues to include Jay Ireland; Cheryl Young; Michael Jack; Frank Comerford; Steve Doerr; and Brandon Burgess.

7.

When the event ended, we were shuttled back to the NBC designated Olympics hotel on a small shuttle bus with single-aisle double-seating with the seats located directly across

from the opposing row on the opposite side of the aisle. I was seated directly across the aisle from Mr. Doerr.

8.

As we rode back to the hotel, Mr. Doerr, completely unsolicited and without warning, yells out to Brandon Burgess, who was seated behind Mr. Doerr, "Hey Brandon! What is it that they say uhhh… Jews On Your Knees! Jews On Your Knees!"

9.

I immediately asked Mr. Doerr, "What did you say?"

10.

Immediately Brandon Burgess also asked, "What???"

11.

I immediately leaned forward so that Mr. Doerr had a clear view of me in my seat and turned my body to face Mr. Doerr.

12.

I heard Ms. Young seated in the rear state, "Steve, how dare you."

Mr. Doerr then seeing me looking at him asked "Hey Paula, what's the word for Black people?"

14.

I interjected, "Steve, you don't want to say one word about Black people."

15.

Mr. Doerr then sat with his spouse giggling and laughing, and finally quieting down for the duration of the shuttle ride.

16.

Within the next 30 minutes, upon departing the shuttle, Frank Comerford and I directed our paths to Jay Ireland, who was our Supervisor, and asked him whether he had heard what Mr. Doerr said. Mr. Ireland stated that with the engine noise and by his sitting in the front working on his Blackberry, he could not hear what was going on in the rear of the shuttle. As Mr. Comerford and I recounted Mr. Doerr's statements, Mr. Ireland directed me to await Mr. Doerr the following morning at the elevator bank to our suites and bring him directly to a meeting spot.

17.

In the morning, I complied with the directive from Mr. Ireland and waited for Mr. Doerr at the elevator bank to bring him directly to Mr. Ireland.

18.

Mr. Doerr was ultimately ordered to immediately leave the Olympics and report back to his home, pending an investigation into his behavior on the shuttle bus.

19.

After an investigation conducted by NBC, Mr. Doerr was subsequently no longer employed by NBCU, to my knowledge.

20.

Throughout the years, I have remained an Executive in these industries, as have my colleagues Cheryl Young, Michael Jack, Frank Comerford, and Brandon Burgess.

21.

To my knowledge, Mr. Doerr's racist statement and behavior have limited his progress upon his being hired elsewhere in the industry.

22.

I have mentored a number of today's television, news broadcasters, reporters, and industry professionals. Mr. Michael Dunston is one of my mentees.

23.

As he recounted his experiences at WGCL TV, Channel 46 in Atlanta, I was not surprised to hear that Mr. Doerr was a significant contributor to his discriminatory treatment, given my experience with Mr. Doerr.

24.

As an industry executive, it would appear that the station's previous history with discriminatory practices was not properly addressed, in fact, likely made worse by hiring Mr. Doerr.

FURTHER AFFIANT SAYETH NOT.

_Paula Madison_　　2/12/21

Sworn to and subscribed
before me this

       day of *February*,
*2021.*

---------------------------

.Notary Public

My Commission Expires:

---

A notary public or other officer completing this
certificate verifies only the identity of the
individual who signed the document to which this
certificate is attached, and not the truthfullness,
accuracy, or validity of that document.

---

State of California
County of Los Angeles

Subscribed and sworn to (or affirmed) before me
on this ___12ᵗʰ___ day of ___February___, 20___2I___,
by ___Paula      Madison___
proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

_____
          Signature

MICHELLE LEE
Comm. #2198624
Notary Public · California
Los Angeles County
Comm. Expires Jun 20, 2021

# EXHIBIT C

1   Joshua D. Gruenberg, Esq. SB #163281
    Corey P. Hanrahan, Esq. SB #256835
2       LAW OFFICE OF
     **JOSHUA D. GRUENBERG**
3       2169 FIRST AVENUE
    SAN DIEGO, CALIFORNIA 92101-3542
4      TELEPHONE: (619) 230-1234
     TELECOPIER: (619) 230-1074
5

6   Attorneys for Plaintiff,
   **LISA LAKE-CAMPBELL**

7

8       SUPERIOR COURT OF THE STATE OF CALIFORNIA

9         SAN DIEGO JUDICIAL DISTRICT

10   LISA LAKE-CAMPBELL, individual     Case No.   37-2009-00088294-CU-OE-CTL

11       Plaintiff,          PLAINTIFFS' COMPLAINT FOR:

12       v.            1.   DENIAL OF EQUAL PAY (Cal. Labor
                         Code § 1197.5, et seq.);
13   McGRAW-HILL BROADCASTING    2.   RACIAL DISCRIMINATION (Cal.
    COMPANY, INC., a corporation, KGTV      Gov't Code § 12940, et seq.);
14   CHANNEL 10, and unknown business entity,   3.   GENDER HARASSMENT (Cal. Gov't
    SEAN KENNEDY, an individual, and DOES      Code § 12940, et seq.);
15   1 through 25, Inclusive,        4.   RETALIATION (Cal. Gov't Code
                         § 12940, et seq.);
16       Defendants.       5.   WRONGFUL CONSTRUCTIVE
                         TERMINATION;
17                      6.   BREACH OF WRITTEN CONTRACT;
                       7.   INTENTIONAL INFLICTION OF
18                        EMOTIONAL DISTRESS.

19                      [JURY TRIAL DEMANDED]

20

21      COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

22      **GENERAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION**

23   1.   Plaintiff, LISA LAKE-CAMPBELL (hereinafter "Plaintiff" or "LAKE-CAMPBELL") is

24      and at all times herein mentioned was a resident of the County of San Diego in the State

25      of California.

26   2.   Plaintiff believes and thereon alleges that at all times herein mentioned, McGRAW-HILL

27      BROADCASTING COMPANY, INC., (hereinafter "McGRAW-HILL" or collectively

28      "Defendants") is a corporation authorized for, and doing business in the State of

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1   California, and is an entity subject to suit under the California Fair Employment and

2   Housing Act, Government Code § 12940, et seq. On information and belief MCGRAW-

3   HILL employs in excess of five (5) employees in San Diego County and elsewhere.

4   3.   Plaintiff believes and thereon alleges that at all times herein mentioned, KGTV

5   CHANNEL 10, (hereinafter "10 NEWS" or collectively "Defendants") is an unknown

6   business entity doing business in the State of California, and is an entity subject to suit

7   under the California Fair Employment and Housing Act, Government Code § 12940, et

8   seq. On information and belief 10 NEWS employs in excess of five (5) employees in San

9   Diego County and elsewhere.

10   4.   Plaintiff believes and thereon alleges that at all times herein mentioned, SEAN

11   KENNEDY (hereinafter "KENNEDY" or collectively "Defendants") was, and is a

12   resident of the County of San Diego in the State of California.

13   5.   KENNEDY, as news director, was a managing agent of 10 NEWS, and as such, 10

14   NEWS is vicariously liable for the actions and conduct of KENNEDY.

15   6.   Furthermore, MCGRAW-HILL, as the parent company of 10NEWS, is vicariously liable

16   for the actions and conduct of 10NEWS and its employees and agents.

17   7.   Plaintiff is ignorant of the true names and capacities of the Defendants sued herein as

18   DOES 1 through 25 and therefore sue these Defendants by such fictitious names. Plaintiff

19   will amend this Complaint to allege the true names and capacities when they are

20   ascertained.

21   8.   Plaintiff believes and thereon alleges that each fictitiously named Defendant is

22   responsible in some manner for the occurrences herein alleged and Plaintiff's injuries and

23   damages as herein alleged are directly, proximately and/or legally caused by Defendants

24   and all of their acts.

25   9.   Plaintiff believes and thereon alleges that each of these Defendants named herein as

26   DOES are the agents, employers, representatives or employees of the other named

27   Defendants and when performing the acts alleged herein, were acting within the scope of

28   their agency, employment and/or representative capacity and are therefore responsible for

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1   the acts complained of herein.

2   10.   The tortious acts and omissions alleged to have occurred herein were performed by

3         management level employees.

4   11.   The actions of Defendants, and each of them, against the Plaintiff constitute unlawful

5         employment practices in violation of California Government Code section 12940, <u>et seq.</u>,

6         and have caused, and will continue to cause, Plaintiff loss of earnings.

7   12.   As a further legal (proximate) result of the unlawful and intentional discriminatory actions

8         of Defendants, and each of their agents, against Plaintiff as alleged herein, Plaintiff has

9         been harmed in that she has suffered emotional pain, humiliation, mental anguish, loss of

10        enjoyment of life, and emotional distress.

11  13.   Defendants, and each of them, committed these acts alleged herein maliciously,

12        fraudulently, and oppressively, and with the wrongful intention of injuring Plaintiff, and

13        acted with an improper and evil motive amounting to malice or despicable conduct.

14        Alternatively, Defendants' wrongful conduct was carried out with a conscious disregard

15        for Plaintiff's rights.

16  14.   Defendants' conduct warrants the assessment of punitive damages in an amount sufficient

17        to punish Defendants and deter others from engaging in similar conduct.

18  15.   Defendants are "supervisors" or "managers" within the meaning of California

19        Government Code section 12940, <u>et seq.</u>

20  16.   Plaintiff seeks compensatory damages, punitive damages, costs of suit herein, and

21        attorneys' fees pursuant to California Government Code section 12940, <u>et seq.</u>

22  17.   Plaintiff LAKE-CAMPBELL filed her charges of wrongful termination, demotion, denial

23        of promotion, retaliation, denial of equal pay and harassment against 10 NEWS with the

24        California Department of Fair Employment and Housing ("DFEH") on July 21, 2008, and

25        thereafter on that same day received from the DFEH her "right to sue."   Plaintiff LAKE-

26        CAMPBELL filed her charges of wrongful termination, demotion, denial of promotion,

27        retaliation, denial of equal pay and harassment against McGRAW-HILL and KENNEDY

28        with the California Department of Fair Employment and Housing ("DFEH") on April 22,

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1  2009, and thereafter on that same day received from the DFEH her "right to sue." These

2  documents are collectively attached hereto as "EXHIBIT A."

3  **SPECIFIC FACTUAL ALLEGATIONS**

4  18. Plaintiff re-alleges and incorporates by reference each and every allegation contained in

5  the preceding paragraphs as though fully set forth herein.

6  19. Plaintiff is a 43 year old African American female.

7  20. In or around January 1991, Defendants hired Plaintiff as an intern. Thereafter, on or

8  about July 22, 1991, Defendants hired Plaintiff as an editor assistant. Then, in or around

9  July 1992, Defendants selected Plaintiff as a reporter trainee. Next, in or around August

10  1993, Defendants promoted Plaintiff to general assignment reporter. Less than a year

11  later, in or around summer of 1994, Defendants promoted Plaintiff to weekend

12  anchor/reporter. Finally, in or around January 1996, Defendants promoted Plaintiff to the

13  position of morning/midday news anchor. Simultaneously, in or around January 1996,

14  Defendants assigned Bill Griffith as Plaintiff's co-anchor for the morning/midday

15  newscast.

16  21. During the later part of Plaintiff's employment, and at the time of her wrongful

17  constructive termination, KENNEDY served as Plaintiff's immediate supervisor.

18  22. Throughout her employment, Plaintiff performed the duties of her work assignments in a

19  capable and competent manner, as so recognized by management and supervisory

20  personnel. Plaintiff's exceptional performance is reflected in her long tenure and

21  numerous promotions.

22  23. During Plaintiff's employment, Defendants paid Plaintiff a substantially lower wage than

23  her male co-anchor, Bill Griffith. Plaintiff is informed and believes and thereon alleges

24  that throughout her employment, Defendants paid Mr. Griffith a salary of approximately

25  $20,000.00, per annum more than Plaintiff. Plaintiff and Mr. Griffith both provided

26  services to Defendants as anchors on the morning/midday newscast. Therefore, Plaintiff's

27  position was equal to, and required the same skill, effort and responsibility as Mr.

28  Griffith's position. Plaintiff is informed and believes and thereon alleges that

1    Defendants' failure to pay her and Mr. Griffith an equal wage was due to her sex and/or

2    gender.

3  24.  Further, during Plaintiff's employment with Defendants, Defendants had a custom and

4    practice of discriminating against African Americans. By way of example, but not as an

5    exhaustive list, Defendants regularly discriminated against Plaintiff, and other African

6    Americans, as follows:

7    a.   Defendants regularly refused to hire and retain African American employees.

8         However, Defendants continued to hire, and continued to retain non-African

9         American employees. Plaintiff is informed and believes and thereon alleges that

10        Defendants have hired only one African American for a position in the newsroom

11        since in or around the year 2000.

12   b.   In or around January 2002, Plaintiff applied for a position as a news anchor for the

13        5:30 p.m. newscast. Although qualified, Defendants did not choose Plaintiff for

14        the position. A Korean news anchor, Lee Ann Kim, was given the position,

15        despite Plaintiff having been employed by Defendants for a substantially longer

16        period of time.

17   c.   Plaintiff is informed and believes and thereon alleges that Defendants have never

18        employed an African American prime time news anchor. Moreover, in or around

19        summer of 2006, Plaintiff noticed that Defendants employed only three African

20        Americans in the newsroom. Of those three, only two of the African American

21        employees were employed in "on-air" positions. Plaintiff complained to Mike

22        Stutz, Defendants' news director at that time, of the lack of African Americans

23        working in the newsroom. Plaintiff received no response from Defendants.

24   d.   In or around August 2006, Plaintiff applied for a position as a news anchor for the

25        4:00 p.m. newscast. At the same time, Fred Blankenship, an African American

26        weekend News Anchor/weekday Reporter for Defendants, applied for the same

27        position. Although qualified, Defendants did not chose Plaintiff, or Mr.

28        Blankenship for the position. Rather, Steve Atkinson, a Caucasian male, was

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1  given the position as news anchor for the 4:00 p.m. newscast.  Plaintiff is

2  informed and believes and thereon alleges that neither she, nor Mr. Blankenship

3  were chosen for the position because they are African American.

4  e.  In or around summer of 2007, Plaintiff once again complained of the lack of

5  African Americans employed in Defendants' newsroom.  This time, Plaintiff

6  complained to Gary Brown, Defendants' news director at that time.  Plaintiff

7  offered Mr. Brown suggestions on increasing Defendants' recruiting for African

8  American employees.  No action was taken in response to Plaintiff's suggestions.

9  f.  In or around the summer of 2007, Plaintiff and Mr. Brown attended the National

10  Association of Black Journalist (NABJ) convention in Las Vegas, Nevada.  While

11  there, Plaintiff noticed that Mr. Brown avoided her and other African American

12  employees from MCGRAW-HILL's Indianapolis station.  Also, Mr. Brown stated

13  to the human resources representative from MCGRAW-HILL's Indianapolis

14  station that he, "doubted he could find any real talent at the convention."

15  g.  Defendants had an employment practice and employee selection policy that had a

16  disproportionate adverse effect on African Americans.  Plaintiff is informed and

17  believes and thereon alleges that the percentage of Defendants' employees who

18  were African American was disproportionately low compared to the number of

19  applicants and percentage of African American individuals residing in San Diego.

20  By way of example, at the time of Plaintiff's wrongful constructive termination,

21  Plaintiff was one of only two African American employees in Defendants'

22  newsroom.  The only other African American employed in Defendants' newsroom

23  was, at that time, on stress leave.  This employee also felt he had been

24  discriminated against because of his race.  Plaintiff is informed and believes that at

25  the time of her wrongful constructive termination, Defendants had approximately

26  sixty (60) employees in the newsroom.

27  h.  On or about January 22, 2008, Plaintiff spoke with Defendants regarding her

28  contract.  On or about January 25, 2008, Defendants informed Plaintiff that they

1    did not intend to renew her fixed term contract. Defendants represented to

2    Plaintiff that no employees would receive a fixed term contract. Plaintiff is

3    informed and believes and thereon alleges that other non-African American

4    employees did in fact receive fixed term contracts. Plaintiff believes that

5    Kimberly Hunt, one of Defendants' Caucasian employees, received a fixed term

6    contract in or around December 2007. Plaintiff is informed and believes and

7    thereon alleges that she was not given a fixed term contract because she is African

8    American.

9    i.    In or around March 2, 2008, Plaintiff attended one of Defendants' staff meetings.

10    At this meeting, Plaintiff once again complained of Defendants' continual failure

11    to employ African American employees. Thereafter, on or about May 9, 2008,

12    Defendants retaliated against Plaintiff by demoting her from her position as anchor

13    on the morning newscast, to the position of co-anchor on the 11:00 a.m. newscast,

14    and reporter for the 7:00 p.m. newscast. Defendants replaced Plaintiff's position

15    of anchor of the morning newscast with a Hispanic woman.

16    25.    During Plaintiff's employment, KENNEDY repeatedly subjected Plaintiff to severe and

17    pervasive harassment, on the basis of her gender. By way of example, but not as an

18    exhaustive list, KENNEDY regularly participated in the following harassing conduct

19    directed towards Plaintiff:

20    a.    KENNEDY regularly called Plaintiff, and other female employees, "bitches."

21    b.    KENNEDY regularly commented to Plaintiff, and other female employees, on

22    their physical appearance. For example, KENNEDY regularly commented to

23    Plaintiff, and other female employees, that they "looked hot," or that they "looked

24    sexy."

25    26.    During Plaintiff's employment, Plaintiff made several complaints to Defendants regarding

26    discrimination against African American employees, as stated herein. Plaintiff is

27    informed and believes and thereon alleges that these statements were a motivating factor

28    for Defendants' retaliation against Plaintiff. Defendants retaliated against Plaintiff by

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1　demoting her, and by refusing to renew her fixed term employment contract.

2　27.　In or around July 2008, Plaintiff's employment with Defendants was wrongfully

3　constructively terminated. Defendants subjected Plaintiff to unlawful denial of equal pay,

4　harassment and discrimination based on her and gender, as stated herein. Furthermore, as

5　stated herein, Defendants subjected Plaintiff to adverse treatment in retaliation for her

6　opposition to Defendants' discrimination against African Americans. Defendants' denial

7　of equal pay, harassment, discrimination and retaliation created a workplace so intolerable

8　for Plaintiff that she had no choice but to involuntarily resign her employment with

9　Defendants. Indeed, no reasonable woman in Plaintiff's shoes would have remained

10　employed with Defendants under working conditions described herein.

11　28.　Plaintiff was under a written employment contract ("Employment Contract") with

12　Defendants from January 15, 2005, to January 14, 2008. A copy of Plaintiff's

13　Employment Contract is attached hereto as "EXHIBIT B." Plaintiff's Employment

14　Contract provided that, "[Defendant] may, at its sole option, choose not to renew this

15　agreement by giving [Plaintiff] written notice of its intention at least sixty (60) days prior

16　to the anniversary date in year two of this agreement." Defendants failed to provide

17　Plaintiff with written notice as required by Plaintiff's Employment Contract. Rather, on

18　January 22, 2008, Defendants orally informed Plaintiff that they would not renew her

19　Employment Contract. Defendants breached Plaintiff's Employment Contract by not

20　timely notifying Plaintiff in writing of their intention not to renew her Employment

21　Contract. Accordingly, Plaintiff's Employment Contract should have been automatically

22　renewed, by its own terms, for another three years. Defendants breached Plaintiff's

23　Employment Contract by not providing her with a new employment contract.

24　　　　　　　　　**FIRST CAUSE OF ACTION**

25　　　　　　　　　**DENIAL OF EQUAL PAY**

26　　　　**(Cal Gov't Code § 12940, et seq., and Cal. Labor Code § 1179.5, et seq.**

27　　　　　　　**v. Defendants McGRAW-HILL & 10 NEWS)**

28　29.　Plaintiff re-alleges and incorporates by reference each and every allegation contained in

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

the preceding paragraphs as though fully set forth herein.

30. Plaintiff believes and thereon alleges that Defendants paid Plaintiff a lower salary than her male co-anchor due to her sex and/or gender.

31. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. Plaintiff has sought to mitigate these damages.

32. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

33. As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with each of Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

34. Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

## SECOND CAUSE OF ACTION

### RACIAL DISCRIMINATION

**(Cal. Gov't Code § 12940, et seq. v. Defendants McGRAW-HILL & 10 NEWS)**

35. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

36. At all times mentioned herein, California Government Code section 12940 et seq., was in full force and effect and was binding on Defendants. This section requires Defendants, as employers, to refrain from discriminating against any employee on the basis of race.

37. Plaintiff believes and thereon alleges that her race, African American, was a motivating factor in Defendants' adverse actions directed against her as set forth herein. Such actions are in violation of California Government Code sections 12940 et seq., and have resulted in damage and injury to Plaintiff, as alleged herein.

38. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

LAW OFFICE OF JOSHUA D. GRUENBERG 2169 FIRST AVENUE SAN DIEGO, CALIFORNIA 92101

1    sustained and continues to sustain substantial losses in earnings and other employment

2    benefits and opportunities. Plaintiff has sought to mitigate these damages.

3    39.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

4           suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

5           mental and physical pain and anguish, all to her damage in a sum to be established

6           according to proof.

7    40.    As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled

8           to recover punitive and exemplary damages in an amount commensurate with each of

9           Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible

10          conduct.

11   41.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

12                          **THIRD CAUSE OF ACTION**

13                            **GENDER HARASSMENT**

14              **(Cal. Gov't Code § 12940, et seq. v. All Defendants)**

15   42.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

16          the preceding paragraphs as though fully set forth herein.

17   43.    At all times mentioned herein, the provisions set forth in California Government Code

18          12940, were in full force and effect and were binding on Defendants. This section

19          requires Defendants, as employers, to refrain from harassing any employee on the basis of

20          gender.

21   44.    Plaintiff believes and thereon alleges that her gender, female, was a motivating factor in

22          Defendants' harassment directed against her as set forth herein. Such actions are in

23          violation of California Government Code sections 12940 et seq., and have resulted in

24          damage and injury to Plaintiff, as alleged herein.

25   45.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

26          sustained and continues to sustain substantial losses in earnings and other employment

27          benefits and opportunities. Plaintiff has sought to mitigate these damages.

28   46.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

LAW OFFICE OF:
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1    suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

2    mental and physical pain and anguish, all to her damage in a sum to be established

3    according to proof.

4    47.    As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled

5    to recover punitive and exemplary damages in an amount commensurate with each of

6    Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible

7    conduct.

8    48.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

9    ## FOURTH CAUSE OF ACTION

10    ## RETALIATION

11    **(Cal. Gov't Code § 12940, et seq. v. Defendants MCGRAW-HILL & 10 NEWS)**

12    49.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in

13    the preceding paragraphs as though fully set forth herein.

14    50.    Defendants engaged in acts set forth herein with the intent to retaliate against Plaintiff

15    because Plaintiff complained about racial discrimination by Defendants.

16    51.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

17    sustained and continues to sustain substantial losses in earnings and other employment

18    benefits and opportunities. Plaintiff has sought to mitigate these damages.

19    52.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has

20    suffered and continues to suffer humiliation, emotional distress, loss of reputation, and

21    mental and physical pain and anguish, all to her damage in a sum to be established

22    according to proof.

23    53.    As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled

24    to recover punitive and exemplary damages in an amount commensurate with each of

25    Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible.

26    conduct.

27    54.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

28    ///

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

## FIFTH CAUSE OF ACTION

### WRONGFUL CONSTRUCTIVE TERMINATION

**(Cal. Gov't Code § 12940, et seq. v. Defendants McGRAW-HILL & 10NEWS)**

55.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

56.    In taking the adverse actions against Plaintiff, herein alleged, Defendants created a hostile work environment; a work environment rife with harassment, retaliation, and discrimination, as set forth herein, such that Plaintiff had no reasonable choice but to leave her job with Defendants. Indeed, no reasonable woman in Plaintiff's shoes would have remained employed with Defendants under working conditions described herein.

57.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. Plaintiff has sought to mitigate these damages.

58.    As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

59.    As a result of Defendants' deliberate, outrageous, despicable conduct, Plaintiff is entitled to recover punitive and exemplary damages in an amount commensurate with each of Defendants' wrongful acts and sufficient to punish and deter future similar reprehensible conduct.

60.    Plaintiff has incurred and continues to incur legal expenses and attorneys' fees.

## SIXTH CAUSE OF ACTION

### BREACH OF WRITTEN CONTRACT

**(v. Defendants McGRAW-HILL & 10NEWS)**

61.    Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

62.    Plaintiff and Defendants entered into a written contract.

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA  92101

63. Plaintiff did all, or substantially all, of the significant things that the contract required of her.

64. All conditions required for Defendants' performance had occurred.

65. Defendants failed to do something that the contract required them to do.

66. Plaintiff was harmed by Defendants' failure.

## SEVENTH CAUSE OF ACTION

### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

#### (v. All Defendants)

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

68. Defendants' intentional conduct, as set forth herein, was extreme and outrageous. Defendant intended to cause Plaintiff to suffer extreme emotional distress.  Plaintiff did suffer extreme emotional distress.

69. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has sustained and continues to sustain substantial losses in earnings and other employment benefits and opportunities. Plaintiff has sought to mitigate these damages.

70. As a direct, foreseeable, and proximate result of Defendants' conduct, Plaintiff has suffered and continues to suffer humiliation, emotional distress, loss of reputation, and mental and physical pain and anguish, all to her damage in a sum to be established according to proof.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

LAW OFFICE OF
JOSHUA D. GRUENBERG
2169 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

1    **WHEREFORE**, Plaintiff prays for the following relief:

2     1.    For compensatory damages, including loss of wages, promotional opportunities,

3          benefits and other opportunities of employment, according to proof;

4     2.    For special damages, including lost earnings and medical bills, in an amount

5          according to proof;

6     3.    For punitive damages in an amount necessary to make an example of and to

7          punish defendants, and to deter future similar misconduct;

8     4.    For mental and emotional distress damages;

9     5.    For back pay, front pay and other monetary relief;

10     6.    For an award of prevailing party attorney fees as allowed by Cal. Gov. Code §

11          12965(b);

12     7.    For costs of suit herein;

13     8.    For an award if interest, including prejudgment interest, at the legal rate;

14     9.    For such other and further relief as the Court deems proper and just under all the

15          circumstances.

16   **PLAINTIFF LISA LAKE-CAMPBELL** demands a jury trial on all issues in this case.

17

18   DATED: April 22, 2009          **LAW OFFICE OF JOSHUA D. GRUENBERG**

19

20

21                                 JOSHUA D. GRUENBERG, ESQ.
                                   COREY P. HANRAHAN, ESQ.

22                                 Attorneys for Plaintiff,
                                 **LISA LAKE-CAMPBELL**

23

24

25

26

27

28